# Staunton.

## MRS. QUEENIE HUNTER v. FRED R. BANE.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*Gilmer & Wysor*, for the appellant.

*John S. Draper* and *W. B. Kegley*, for the appellee.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Pulaski county, in a cause wherein appellant was complainant and appellee was respondent. The facts may be summarized thus:

Appellant was the owner of a lot and dwelling house in the city of Pulaski. Upon this property there were two deeds of trust securing indebtedness amounting to $4,300.00. This indebtedness appellant was unable to discharge. By deed of bargain and sale, absolute upon its face and dated June 9, 1916, appellant conveyed the property to appellee, the consideration being set forth as follows:

"That for and in consideration of the undertaking and obligating himself to pay off and discharge a certain deed of trust, executed by said party of the first part to John S. Draper, trustee, *and* on the 2nd

day of June, 1908, which is recorded in Pulaski county clerk's office in trust deed book No. 10, page 254; and also a deed of trust executed by said party of the first part to A. T. Eskridge, trustee, on the first day of July, 1915, and recorded in Pulaski county clerk's office in trust deed book No. 14, page 524, the said party of the first part hereby bargains, sells, deeds, grants and conveys to the said party of the second part, with general warranty of title, all of that certain lot or parcel of land lying and being in the town of Pulaski, State of Virginia, situate on north side of Fifth street, north, and bounded and described as follows: *  *  *."

On June 20, 1916, appellee paid the first deed of trust upon the property, amounting to about $3,650.00, and on February 20, 1920, executed a deed of trust upon same to secure a loan of $4,500.00. The dwelling was remodeled by appellee at a cost of approximately $7,722.00, and during the period from 1916 to 1926, appellee paid taxes and insurance upon the property amounting to the sum of $1,173.04.

At the time of the conveyance, appellee, who is a nephew of appellant, was unmarried, and for a period of four years thereafter appellant continued to occupy the property, paying a rental therefor amounting in the aggregate to $800.00. After the marriage of appellee, he occupied the second floor of the dwelling, assigning to appellant the use of the first floor, each party sharing in the expense of lights and fuel. This arrangement continued for a time, until appellee informed appellant that it was his intention to dispose of the property. Thereupon, appellant instituted this suit.

The prayer of the bill is that appellee be enjoined from disposing of the property; that a trust be declared

in favor of complainant in the real estate conveyed; that the deed executed by complainant to F. R. Bane be declared a mortgage, and by reason of the dealings between the parties, that the mortgage debt be discharged, and that complainant be decreed the use and occupancy of the lower part of the property. Appellee filed his answer to the bill, denying that complainant was entitled to the relief sought, and depositions were duly taken.

When the cause was called for submission, appellant requested that an issue out of chancery be directed. This request the chancellor refused to grant. Thereupon, the cause was submitted upon bill and answer and the depositions of witnesses, and in the final decree in the cause, the court decreed as follows: "* * that the property in the bill and proceedings mentioned was conveyed to the defendant, Fred R. Bane, free from the mortgage or trust set up by the complainant, Mrs. Queenie Hunter, and that the complainant has failed to establish any trust or mortgage affecting the said property, and that the said defendant, Fred R. Bane, owns said property in fee simple and free of any alleged mortgage or trust in behalf of the complainant."

Appellant assigns the following errors:

"That the circuit court should have declared the deed of June 9, 1916, a mortgage.

"That the court should have established in favor of petitioner the express trust in said property claimed by her in her bill.

"That the court should have submitted the issues of fact relating distinctly to the mortgage and express trust features of the case to a jury."

Filed with the bill of complaint as an exhibit thereto is the deed from appellant to appellee. This deed is absolute upon its face and for a valuable

consideration. The presumption of law is that when one executes a deed of conveyance absolute upon its face and for a valuable consideration, the deed is what it purports to be, a valid conveyance, and the burden is upon the grantor to rebut by clear, unequivocal and convincing evidence this presumption. That this presumption may be rebutted by extrinsic parol evidence is well settled in this State. *Holliday* v. *Willis*, 101 Va. 274, 43 S. E. 616.

In L. R. A., 1916B, 186, 188, it is said: "The party who alleges that the transaction under review was a mortgage, must establish these facts: (1) An intention existing at the time when the given instrument was executed; (2) an intention entertained both by the transferer and the transferee."

In order to convert a deed absolute upon its face into a mortgage, it must appear that the grantor was indebted to the grantee at the time the conveyance was executed, and that its prime purpose was to secure the debt. "The existence of a debt is the test. A mortgage without debt to support it is a legal solecism."

It is not contended by appellant that she was indebted to appellee. Her only contention on this score is that when appellee assumed the payment of the deed of trust liens that it was agreed that "he would hold the house and when the property got high we would either sell it, or if he wanted to, fix it up, and it would be my home and his home ·* * * and if the time came when we got a good chance to sell, all over what he put in it would be mine." This agreement is denied by appellee and in support of his claim it is shown that on two occasions Bane executed deeds of trust upon the property to secure his personal indebtedness. Mrs. Hunter was not a party to either

deed and in each there was inserted the provision that in case of foreclosure any surplus arising from the sale should be paid to Bane. That Mrs. Hunter did not consider the deed a mortgage is made manifest by her own statement. She says in her deposition:

"I had only what he promised. I asked him to give me in writing something to show that I would have even one room to call home. I, of course, thought I might be with the children some, but I wanted somewhere that would be home. He said no, he wouldn't do that, but he said for me to live in the lower floor, and he would live in the upper floor and we wouldn't bother each other. It was all in friendly talk—just like common conversation. Well, that was all I could do; I just lived on there. I told him when he came to fix up the place that I could not pay him any more money. My people all had to leave. I could not pay the $20.00 per month like I had been paying."

The conclusion that no mortgage existed is inevitable when the record conclusively shows that, due to the financial condition of Mrs. Hunter, she conveys property already encumbered with deed of trust liens to prevent a foreclosure; that no definite time was stated in the deed for the repayment to Bane of the money advanced by him to relieve his aunt of financial worries; that no offer has ever been made by Mrs. Hunter to repay the money; that no express agreement is contained in the deed in regard to the payment of interest; that Bane expended a large sum of money to improve the property; that he paid the taxes and insurance upon the property for a period of years; and that, instead of claiming a right in the property, Mrs. Hunter became a lessee of Bane at a rental of $20.00 per month. The fact that Mrs. Hunter has remained in part possession of the property, when viewed in the

light of the circumstances detailed, cannot be regarded as inconsistent with an absolute conveyance of the same. *Edwards* v. *Wall*, 79 Va. 321. There is no merit in this assignment of error.

The second assignment of error, that the court erred in refusing to establish an express trust upon the property involved in favor of appellant, is also without merit. What has been said with reference to a mortgage applies as well to the contention of appellant that appellee holds the property impressed with a trust in her favor. While an express trust in real estate may be created and established by parol, the declaration must be explicit and the evidence in support thereof clear, convincing and unequivocal. *Young* v. *Holland*, 117 Va. 433, 84 S. E. 637. In the instant case we find appellant claiming in one breath that the conveyance was a mortgage, and in the second breath that appellee holds the property under a parol trust. Such claims are inconsistent and very far from convincing. Only the testimony of appellant. that it was to be her home, is offered to support her theory of the establishment of a trust estate.

In *Sewell* v. *Holley*, 189 Ala. 121, 66 So. 506, 508, it is said: "Loose declarations of trust and casual conversations derogatory of the grantee's title, have not been regarded as possessing much probative force in cases like this, even when proven to have been made; while the unsatisfactory and unreliable character of evidence of verbal statements easy to be misunderstood and difficult to be accurately reproduced, is everywhere recognized by those accustomed to deciding controverted questions of fact, particularly when given long after the event and without motive to impress the conversation upon the memory."

■ The burden was upon appellant to establish the trust, and this she has failed to do.

The last assignment of error challenges the ruling of the court in refusing to grant the motion of appellant that an issue out of chancery be directed, triable by jury. Section 6246 of the Code of 1919 which provides for the trial of an issue out of chancery reads thus: "Any court in which a chancery case is pending may direct an issue to be tried in such court or in any circuit or corporation court, and the court shall have the discretion to direct such an issue to be tried before any proof has been taken by either the plaintiff or defendant if it shall be shown by affidavit or affidavits after reasonable notice that the case will be rendered doubtful by the conflicting evidence of the opposing party."

■ In Barton's Chancery Practice, 495. it is said: "Whether an issue will be directed, is a matter of discretion, which must be exercised upon sound principles of reason and justice, subject to the supervision of the appellate court. While the court often directs an issue when the evidence is so contradictory as to render an open cross-examination of the witnesses proper, yet it does not follow that an issue is necessary and proper in every case where the evidence happens to be conflicting; and the court is not bound, on that mere ground, to direct an issue, but may judge of the weight of evidence, and if its conscience is satisfied, may decide without a jury."

The above is a correct statement of the law. *Massie* v. *Parrish*, 140 Va. 717, 125 S. E. 691.

■ The record fails to disclose any affidavits filed by appellant in support of her motion. The petition for appeal does, however, disclose this situation:

"There was no record or formal application made to

the learned judge of the circuit court, but in the brief filed in the lower court by counsel for Mrs. Hunter, this feature of the case is referred to as follows:

"'As already pointed out, there seems to be no such conflict in the testimony here as would give your honor any difficulty, or as would require, as our Supreme Court held in the case of *Hook* v. *Hook*, 126 Va. 249, 101 S. E. 223, an issue out of chancery. Such an issue would only be directed in case of such serious conflict as would make the chancellor feel he could not arrive at a satisfactory conclusion on the facts.

"'It would seem under the reasoning of the *Hook Case*, which seems to be especially applied to cases of this nature, it is necessary for the court, even on its own motion, to direct an issue out of chancery, if there is a serious conflict in the evidence, and if your honor finds this conflict so serious as to cast any doubt upon Mrs. Hunter's contention, or on Mr. Bane's contention, for that matter, we are willing that the issue be directed, and request that this be done.

"'We think, however, your honor will find Mrs. Hunter's contention so well established as to render this procedure unnecessary.'"

In view of this concession we deem it unnecessary to further discuss this assignment of error.

It is assigned as cross-error: "That the circuit court should have entered a decree directing that complainant vacate said premises and deliver immediate possession thereof to respondent."

For the reasons stated by the trial court in its final decree, we are of opinion that this cross-assignment of error is without merit. There it is said: "Thereupon, the defendant moved the court to establish and decree to defendant the right to immediate possession of the property in the bill and proceedings mentioned, and to

further decree that the complainant, Mrs. Queenie Hunter, forthwith vacate said premises and deliver possession thereof to the said defendant; but the court being of the opinion that the matters embraced in the said motion of defendant are not presented by the pleadings and evidence in the case, doth overrule said motions, but without prejudice to any rights of said defendant in respect to the possession of said premises which may be hereafter set up in this or any other proceeding or action."

Upon the whole case, we find no error in the decree appealed from and it is affirmed.

*Affirmed.*